UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MISTY S. DRAPER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
    _____/

Case No. 1:16-cv-775

HON. JANET T. NEFF

# OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner). Plaintiff seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was thirty years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.33, 145.) She completed two years of college, and was previously employed as a cashier / stocker, deli clerk, general laborer, inspector, and quality inspector, although the ALJ determined none of this work amounted to past relevant work. (PageID.47, 322–323.) Plaintiff previously applied for benefits on July 21, 2010, alleging that she had been disabled since July 15,

2

2009. (PageID.125.) On February 10, 2012, Plaintiff's application was denied by ALJ Paul W. Jones, and on June 10, 2013, the Appeals Council declined to review the ALJ's decision. (PageID.122–143.) Plaintiff sought review of that decision in federal court, but on December 18, 2013, Plaintiff filed a motion to voluntarily dismiss her case, which was subsequently granted. (*See Draper v. Comm'r of Soc. Sec.*, 1:13-cv-862 ECF No. 13 (W.D. Mich. Dec. 18, 2013)).

In this instant matter, Plaintiff filed for benefits on November 19, 2013, alleging disability beginning February 11, 2012 (the date following the day of ALJ Jones' decision) due to chronic pain, post-surgical chronic back pain, chronic knee and ankle pain, depression, affective disorder, and anxiety. (PageID.145–146, 155–156, 289–298.) Plaintiff's applications were denied on December 18, 2013, after which time she requested a hearing before an ALJ. (PageID.168–188.) On April 20, 2015, Plaintiff appeared with her counsel before ALJ Thomas English for an administrative hearing with testimony being offered by Plaintiff, a medical expert, and a vocational expert (VE). (PageID.57–110.) In a written decision dated May 1, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.33–55.) On April 21, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.20–22.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).[1]

---

[1] On September 19, 2016, the Court entered a notice in this case regarding consent and directing the filing of briefs. The notice stated, in part, that Plaintiff's "initial brief shall not exceed 20 pages." The Court further stated that "strict compliance" with the notice's briefing requirements was expected. (PageID.981–982.) On October 26, 2016, Magistrate Judge Green entered an order striking Plaintiff's initial brief for, among other things, exceeding the page limits in this case, and ordered Plaintiff to file another initial brief that complied with the Court's earlier notice. (PageID.1011–1012.) Plaintiff's resubmitted brief inexplicably still exceeds the page limits set in this case. (ECF No. 11.) Plaintiff's counsel is cautioned that strict adherence to the Court's notices and orders is expected.

# ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ English determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her

---

[2] 
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

alleged disability onset date. (PageID.39.) At step two, the ALJ determined Plaintiff had the severe impairments of: (1) status-post right knee medial patellofemoral ligament repair of the right knee; (2) chronic left lateral patellar instability of knee status-post open reduction lower left leg; (3) affective disorder; (4) reflex sympathetic dystrophy syndrome; and (5) Degenerative Disk Disease. (PageID.39.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.39–41.) At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant must alternate between sitting and standing every 30 minutes, for 30 minutes at a time. The claimant can never use foot controls bilaterally, climb ladders and scaffolds, kneel, crouch, or crawl; occasionally climb ramps and stairs and stoop; and frequently balance. The claimant can tolerate no exposure to unprotected heights or moving mechanical parts, and must avoid concentrated exposure to vibrations. The claimant can understand, remember, and carryout simple, routine, and repetitive work tasks (not at a production rate pace).

(PageID.41.) Continuing with the fourth step, the ALJ found that Plaintiff had no past relevant work. (PageID.47.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform other work as a hand packager (20,000 positions), materials handler (40,000 positions), and as an inspector (10,000 positions). (PageID.102–106.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.48.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from February 11, 2012, the alleged disability onset date, through May 1, 2015, the date of decision. (PageID.49.)

**DISCUSSION**

**1.     The ALJ's Step Three Evaluation.**

The Listing of Impairments, detailed in 20 C.F.R., Pt. 404, Subpt. P, App. 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. A claimant bears the burden of demonstrating that she meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). Here, Plaintiff maintains that the ALJ's analysis of the listings was flawed because the ALJ failed to cite to the correct regulation, and "cherry picked" the record to support his determination. She further argues the ALJ could not rely on the testimony of the medical expert. Finally, she contends the preponderance of the evidence demonstrates she equals Listings 1.02 and 1.04. While the Court does not doubt that Plaintiff is limited due to the extent of her back and lower extremity impairments, substantial evidence nonetheless supports the ALJ's step three conclusion.

Plaintiff did not argue to the ALJ, the Appeals Council, or to this Court that she actually meets a Listing. Rather she argues that her impairments are equivalent to Listings 1.02 and 1.04. It is possible for a claimant to provide evidence of a medical equivalent to a listing. 20 C.F.R. §§ 404.1526, 416.926. To do so, a Plaintiff must prove "'medical findings equal in severity to *all* the criteria for the listed impairment.'" *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (*quoting Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original)). It was not the ALJ's burden. *See Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004) (Plaintiff "must present

specific medical findings that his impairment meets the applicable impairment or present medical evidence that describes how his impairment is equivalent to a listed impairment."); *Shinaver v. Comm'r of Soc. Sec.*, No. 1:14–cv–727, 2015 WL 4644482, at *2 (W.D. Mich. Aug. 4, 2015) (Plaintiff "bore the burden of providing medical evidence to support his equivalency argument."). A social security claimant cannot qualify for benefits under the equivalence step by merely "showing that the overall functional impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* Generally, the opinion of a medical expert is required before a determination of medical equivalence is made. *Retka v. Comm'r of Soc. Sec.*, No. 94–2013, 1995 WL 697215 at *2 (6th Cir., Nov. 22, 1995) (citing 20 C.F.R. § 416.926(b)). If the evidence fails to demonstrate the required severity as to even one of the criteria, it would be fatal to Plaintiff's claim. *See Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). "Even in cases where the claimant has had an impairment which came very close to meeting a listing, this court has refused to disturb the Secretary's finding on medical equivalence." *Retka*, 1995 WL 697215 at *2 (citing *Dorton v. Heckler*, 789 F.2d 363, 366 (6th Cir.1986) (per curiam)); *Price v. Heckler*, 767 F.2d 281, 284 (6th Cir.1985).

The ALJ provided the following discussion of Plaintiff's equivalence argument:

> The claimant's representative argued the claimant's combination of impairments equal listing-level severity due to her [inability to effectively] ambulate. An inability to ambulate effectively is defined as an extreme limitation of the ability to walk, seriously interfering with the individuals' ability to initiate, sustain, or complete activities. The record indicates the claimant can perform personal care tasks, prepare simple and complete meals, complete household chores, drive a motor vehicle, and grocery shop in stores (Exhibit B3E). Even in May of 2013, after the claimant underwent right knee medial patellofemoral ligament repair and was kicked by a horse, the

7

> claimant walked only limited by pain (Exhibit B3F). In October of 2013, practitioners observed only decreased step and length on the left with walking (Exhibit B7F). In October of 2014, Eric Leep, D.O. observed the claimant's gait as normal with some midposition (Exhibit B19F). In March of 2015 the claimant[']s gait was noted to be antalgic (Exhibit B23F).
>
> At the hearing, Arthur Lorber, M.D., a medial expert testified there was sufficient objective medical evidence to form an opinion about the nature and severity of the claimant's impairments during the relevant period. Dr. Lorber concluded the claimant did not meet or equal listings 1.02a or 1.04a based on a review of the medical record. Dr. Lorber cited to objective findings and clinical observations within the record to support his decision. For example, he noted radiology imaging, physical examinations, and reports of activities of daily living (Exhibit 17F, 21F, 23F).

(PageID.39–40.) The court finds this to be a thorough and accurate description of the record that is supported by substantial evidence. Moreover, none of Plaintiff's arguments to the contrary are persuasive. Plaintiff first argues that the ALJ provided an inaccurate definition of an inability to effectively ambulate. The definition relied on by the ALJ appears in the CFR just above the excerpt provided by Plaintiff in her brief: "Inability to ambulate effectively means an extreme limitation of the inability to walk: *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(1). There was nothing incorrect with the ALJ's citation to this regulation. (PageID.39.)

Next, Plaintiff contends the ALJ "cherry picked" the record. The argument that the ALJ mischaracterized or "cherry-picked" the record is frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence, deciding

questions of credibility, or substituting the court's judgment for that of the ALJ. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court finds that the ALJ's decision provides an accurate summary of the administrative record. Plaintiff's burden on appeal is much higher than citing evidence on which the ALJ could have found a greater level of restriction. She must show that the ALJ's factual finding is not supported by substantial evidence. *See Jones*, 336 F.3d at 477 ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."). Plaintiff has not shown error here.

Plaintiff proceeds to argue that the ALJ could not rely on the opinion of Dr. Lorber, the medical expert who testified at the hearing, because the doctor was unprepared, conclusory, and dismissive. (PageID.1029.) She notes the ALJ in fact observed that the expert displayed a disbelief and distrust of her testimony and condition. (PageID.1030.) The expert's testimony, regarding equivalence, appears as follows:

> Okay. So I do not accept that there was a 12 month period during which the claimant met or equaled listing 1.028 [sic] regarding either her ankle or her knee. Regarding listing 1.04 . . . [t]here is no evidence that she has the full panoply of fulcrum nerologic deficits required to meet Listing 1.0488, [sic] as enumerated in the regulations. So it is my considered medical opinion that claimant does not need a recolnis [phonetic] being 1.04 regarding her lumbar spinal condition. And if [sic] it's furthermore my considered medical opinion that patient singularly or in combination, and considering the claimant's body habitess, the claimant does not rise to a listing level.

(PageID.85-87.) Plaintiff's counsel then questioned the expert, and brought to his attention a February 18, 2014, MRI of Plaintiff's lumbar spine, showing a disc bulge contacting the S1 nerve root with a diagnosis of radiculopathy. (PageID.97.) While the expert admitted he may have missed

9

that MRI in his review of the record he stated, after looking at the record, that he still did not "see clinical evidence of the focal neurologic deficits required in order to meet listing 1.048 [sic]." (PageID.98.) Thus Plaintiff's claim that the expert was unprepared or conclusory cannot succeed, as the very flaw she identifies was cured at the hearing. As regards the ALJ's observation concerning the expert's attitude at the hearing, Plaintiff correctly notes that the ALJ observed the doctor "displayed occasional disbelief and distrust" of Plaintiff. (PageID.47.) While the ALJ found much of the opinion to be consistent with the record, it appears that due to this consideration the ALJ reduced the weight assigned the opinion to only "partial weight." Plaintiff has not shown how this runs afoul of the factors for considering medical opinions articulated in 20 C.F.R. §§ 404.1527(c), 416.927(c). "An ALJ may accept parts of a physician's opinoin and reject other parts when such treatment is supported by the record." *Brady v. Astrue*, No. 2:10-00119, 2011 WL 6141037, at *8 (M.D. Tenn. Dec. 9, 2011). Here, the ALJ found the doctor's opinion regarding the listings was consistent with the record. The ALJ did not err by adopting the expert's opinion regarding equivalency, but finding that the record called for a more restrictive RFC.

At bottom, the gist of Plaintiff's claim is that an "inability to sustain ambulation due to orthopedic conditions equals the requirements of Listings 1.02 and 1.04C." (PageID.1026.) Plaintiff further contends, in fact, that "an individual is presumptively disabled" when she cannot ambulate effectively. Under Plaintiff's reading of the listing, anyone who must use a wheelchair or walker would be entitled to disability benefits. Nothing in the listing or relevant case law, however, supports Plaintiff's assertion.

Plaintiff's claim fails in two additional respects. First, the ALJ found that Plaintiff did not meet the agency's definition of an inability to effectively ambulate. As noted above, that

10

finding is supported by substantial evidence. But even assuming Plaintiff did meet the definition of an inability to ambulate, her claim also fails because she has not demonstrated, or even argued, she meets or equals the remaining elements of either Listing 1.02 or 1.04. This is fatal to her claim because:

> Medical equivalence is not a means by which a claimant may be found disabled simply by getting close to meeting a Listing; meeting 5 out of 6 criteria does not suddenly become good enough to find a claimant disabled. When a claimant fails to meet all the criteria of a Listing, that gap cannot just be ignored. Instead, the claimant must point to something to fill that gap, whether it is some other finding of equal medical significance, or a combination of impairments.

*Cueller v. Astrue*, No. 10-C-619, 2011 WL 1743841, at *5 (E.D. Wis. May 5, 2011). Plaintiff has not filled the gap here. Instead, she seeks to rewrite the listing to "bank" credit for her inability to ambulate effectively "against a shortfall elsewhere." Such does not satisfy her burden. *See Mester v. Comm'r of Soc. Sec.*, No. 1:15-CV-0573, 2016 WL 2983736, at *5 (W.D. Mich. May 24, 2016). Accordingly, this claim of error is denied.

### 2. The ALJ's Evaluation of Dr. Frederick Bean's Prescriptions.

Next, Plaintiff points to several prescriptions from Dr. Frederick Bean. The first, dated March 16, 2011, is a prescription for a walker with a seat. (PageID.875.) The second prescription, dated April 5, 2011, appears to indicate Plaintiff requires the use of a wheelchair. (PageID.875.) A few days later, on April 12, 2011, Dr. Bean completed a "certificate of medical necessity" for the wheelchair which indicated, via check marks, that Plaintiff could not ambulate over 150 feet, could not safely and effectively ambulate with a cane or walker, would be expected to sit at least two hours a day in the wheelchair, and would have a lifetime need for use of the wheelchair. The only additional information provided by Dr. Bean was noting that Plaintiff had been

11

falling next to his indication that Plaintiff could not safely and efficiently ambulate with a cane or walker. (PageID.873.)  Finally, Plaintiff points to a February 4, 2015, treatment note from Dr. Bean, which stated that, due to her back pain, he had given Plaintiff a prescription "for walker with seat - needs new or repair."  (PageID.958.)  Plaintiff argues for a remand because these records went "unaddressed" by the ALJ.  (PageID.1031.)

By way of background the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers,* 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be

12

"supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

The Commissioner does not dispute that Dr. Bean qualifies as a treating physician. Nor does she argue the prescriptions are not medical opinions. Instead, the Commissioner notes that the March and April 2011 records concern a previously adjudicated period and predate Plaintiff's alleged onset date of February 11, 2012. Moreover, the Commissioner further argues, all the opinions consist only of checkmark indications with no accompanying explanation. As such, the Commissioner contends any error here is harmless. (PageID.1045–1046.)

Whenever the Commissioner elects not to give controlling weight to the treating physician's opinion, the regulation obligates the Commissioner "always give good reasons in [the] notice of determination or decision for the weight" given to the treating source's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Our Circuit holds that the agency's failure to comply with this requirement is generally not subject to harmless-error analysis. *Bradford v. Comm'r of Soc. Sec.*, 2008 WL 398281 *3 (W.D. Mich. Feb. 11, 2008) (citing *Wilson*, 378 F.3d at 547). However, "a violation of the good reasons rule can be deemed to be 'harmless error' if (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, (2) if the

13

Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, or (3) where the Commissioner has met the goal of [20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)] . . . even though she has not complied with the terms of the regulation." *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 940 (6th Cir. 2011).

As an initial matter, it is not the case that these notes went entirely unaddressed, as Plaintiff claims, albeit they may not have been addressed in the usual manner for medical opinions. Indeed, a review of the ALJ's decision shows the ALJ addressed the 2011 records as follows:

> The claimant presented a prescription for a walker back to March of 2011 and a prescription for a wheelchair from April of 2011 (Exhibit B15F). At the hearing, the claimant testified she has been using both since this time. The medical record, however, mentions the claimant walking with and without a walker. For example, in April of 2013 the claimant ambulated alone after knee surgery (Exhibit B2F). At the hearing, the claimant testified she walked alone after a rhizotomy.

(PageID.43.) Later, the ALJ further discussed Plaintiff's claims of requiring a wheelchair or walker:

> As already mentioned, the record inconsistently mentions the claimant's use of her walker and gait observations. In May of 2013, after the claimant underwent right knee medial patellofermoral ligament repair and was kicked by a horse, the claimant walked only limited by pain (Exhibit B3F). In October of 2013, practitioners observed only decreased step and length on the left with walking (Exhibit B7F). In October of 2014, Dr. Leep observed the claimant's gait as normal with some midposition (Exhibit B19F). In March of 2015 the claimant's gait was noted to be antalgic (Exhibit B23F).

(PageID.46.) Thus, while the ALJ did not assign a specific weight to Dr. Bean's prescriptions, it is clear that the ALJ rejected them. As regards the March 16, 2011; April 5, 2011; and February 4, 2015 prescriptions, the Court finds any error here to be clearly harmless. The notes merely reflect an order that Plaintiff receive a walker or a wheelchair. They contain nothing reflecting judgments about the frequency and length of use that Plaintiff would be required to use these assistive devices.

Not only, therefore, are these opinions patently deficient, it is entirely possible they are consistent with Plaintiff's RFC.

The April 12, 2011 certificate of medical necessity is a closer question. The certificate is not nearly as vague as the other prescriptions and clearly contains limitations greater than those accounted for in the RFC. The Court concludes, however, that any error in failing to adopt Dr. Bean's opinion was again harmless. At the administrative hearing, after posing his hypothetical to the VE, the ALJ asked another hypothetical in which the claimant's RFC would be further reduced in order to account for the use of a wheelchair or walker to ambulate, a restriction consistent with Dr. Bean's opinion. The VE responded that she would reduce the numbers she had provided, but not eliminate them. Specifically, a hypothetical claimant similar to Plaintiff who also required a walker or wheelchair to ambulate could perform work as a hand packager with 15,000 positions, work as a material handler with 30,000 positions, and work as an inspector with 7,000 positions. (PageID.104–105.) This constitutes a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1987). Accordingly, even if the ALJ had adopted Dr. Bean's opinion, "the Commissioner would have still met his burden of showing that a significant number of jobs are available to Plaintiff." *Swett v. Comm'r of Soc. Sec.*, 886 F. Supp. 2d 656, 669 (S.D. Ohio 2012) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987)). For all the above reasons, this claim of error is denied.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is **AFFIRMED.** A separate judgment shall issue.

Dated: April 24, 2017                    /s/ Janet T. Neff
                                          JANET T. NEFF
                                          UNITED STATES DISTRICT JUDGE

15